UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROBIE DAVIDSON,<br><br>        Plaintiff,<br><br>  v.<br><br>ELDON VAIL, DAN PACHOLKE,<br>JEFF UTTECHT, DAVID P. BAILEY,<br>MICHELLE DUNCAN, K. WILLIAMS,<br>DENISE M. COOK, JOHN DOES 1-2,<br><br>        Defendants. | No. C11-6048 BHS/KLS<br><br>**REPORT AND RECOMMENDATION**<br>**Noted for:  February 22, 2013** |

  Before the Court is the Motion to Dismiss of Defendants Eldon Vail, Dan Pacholke, Jeff Uttecht, David Bailey, Michelle Duncan, and K. Williams.  ECF No. 27.   Defendants move to dismiss the Amended Complaint of Robie A. Davidson (ECF No. 6) on four grounds:  1) failure to exhaust administrative remedies; 2) failure to establish personal participation of Defendants; 3) dismissal of Defendants acting in their official capacities; and, 4) qualified immunity.  ECF No. 27.  Defendants served Plaintiff with a "Pro Se Prisoner Dispositive Motion Notice" consistent with *Woods v. Carey*, 684 F.3d 934, 940-41 (9th Cir. 2012).  ECF No. 28.  Plaintiff filed a response in opposition (ECF No. 32), and Defendants filed a reply (ECF No. 33).

  Included in the motion to dismiss is a request that all discovery be stayed pending resolution of this motion.  ECF No. 27, p. 10.  That request was granted by separate Order.  ECF No. 29.  Having carefully considered the motion and balance of the record, the Court recommends that Defendants' motion be granted in part and denied in part as set forth herein.

REPORT AND RECOMMENDATION - 1

## BACKGROUND

**A.      Plaintiff's Allegations – Amended Complaint (ECF No. 6)**

At all times relevant to his Amended Complaint, Plaintiff was incarcerated at the Coyote Ridge Correction Center (CRCC).  ECF No. 6, p. 3.  Mr. Davidson alleges that on August 16, 2010, Jane/John Doe, the supervisor for inmate legal mail at CRCC, opened, refused and returned documents sent by the Kent Municipal Court in Case No. K79016FV.  Plaintiff states that the legal documents regarded quashing a warrant and the discharge of legal financial obligations in the case.  On September 15, 2010, the mailroom supervisor again opened, marked "refused", and returned mail from the Kent Municipal Court.   Plaintiff states that these documents were from the Court and counsel regarding Plaintiff's failure to respond or comply with the documents previously refused on August 16, 2010.  On October 7, 2010, legal documents relating to Case No. K79016FV were opened, marked "refused", and returned to the Kent Municipal Court.  *Id.*  Plaintiff claims that the persons who "upheld, supported, or authorized" the foregoing mail refusals included D. Cook, K. Williams, M. Duncan, D. Bailey, J. Uttecht, E. Vail, D. Pacholke, and the grievance coordinator.  *Id.*

Plaintiff claims that the mail refusals were an interference with his First Amendment right to read his mail and impeded his access to court and counsel.  He alleges that as a result of the mail refusals, he failed to receive notice of hearings and was unable to respond to the Court in the time permitted.  Plaintiff does not identify the nature of the hearings or deadline, but states that because of his inability to prepare, he was denied credit time that he was entitled to, which resulted in a longer incarceration.  He also states that he was forced to resubmit his documents, which consumed over 160 hours of hand-printing and legal research and that he was forced to incur additional postage and copying fees of $265.52.  *Id.*

REPORT AND RECOMMENDATION - 2

In addition to the foregoing, Plaintiff claims that the mail refusals violated his Eighth Amendment rights because they resulted in a delay of his release date and that this, in turn, delayed a surgery for bone damage which was pending his release from prison.  Plaintiff also claims that the mail refusals violated his Fourth Amendment protection against unreasonable searches and seizures and his Fourth and Fourteenth Amendment due process and equal protection rights.  ECF No. 6, pp. 5-6.

Finally, Plaintiff alleges that the mail refusals were retaliatory because he had challenged the DOC on the conditions of his sentence.  He alleges that on May 28, 2010, Defendant Cook cautioned him that he would find it impossible to be able to release from prison on October 30, 2010 if he continued to challenge the DOC.  Also on May 28, 2010, Jane Doe, the grievance specialist, also cautioned him about his challenges, telling him that the "issues are bigger than you know," that a grievance could not resolve these matters, and that he should focus on getting out of prison.  ECF No. 6, p. 6.  Plaintiff does not identify the nature or circumstances of his "challenges" to DOC.

Plaintiff alleges that he was denied credit for pretrial detention and that he was held until November 16, 2010, which was past his release date.  ECF No. 6, p. 6.  He alleges that on November 16, 2010, Defendant Cook asked him to sign a waiver for having been held beyond his release date.  He refused and requested that his grievance on the issue of his detention be appealed to the next level.  He claims that his detention beyond his release date was done in retaliation because he had challenged "DOC on the conditions of [his] sentence."  ECF No. 6, p. 7.

Plaintiff alleges that on November 16, 2010, Defendant Cook directed him to place all of his legal files in a box addressed to his release address.  Over thirty days later, when the box

REPORT AND RECOMMENDATION - 3

1  arrived, it had been opened, read, and all files pertaining to his claim against DOC removed.  He
2  claims that this was done in retaliation for his "challenge of DOC."  ECF No. 6, p. 7.

**B.     Facts Relating to Grievances/Exhaustion of Remedies**

The Washington Offender Grievance Program (OGP) has been in existence since the early 1980s and was implemented on a department-wide basis in 1985.  ECF No. 27, pp. 1-2, ¶ 3.  At the time of entry into the DOC, an offender is provided with information regarding the OGP during the orientation process.  *Id.*  Attachment B to the Declaration of Clara G. Curl, DOC Grievance Program Manager is a true and correct copy of the DOC Orientation-Offender Grievance Procedure.  *Id.*

Under the OGP, inmates may file grievances on a wide range of issues relating to their incarceration. For example, inmates may file grievances challenging: 1) DOC institution policies, rules and procedures; 2) the application of such policies, rules and procedures; 3) the lack of policies, rules or procedures that directly affect the living conditions of the offender; 4) the actions of staff and volunteers; 5) the actions of other offenders; 6) retaliation by staff for filing grievances; and 7) physical plant conditions.  An offender may not file a grievance challenging: 1) state or federal law; 2) court actions and decisions; 3) Indeterminate Sentence Review Board actions and decisions; 4) administrative segregation placement or retention; 5) classification/unit team decisions; 6) transfers; and 7) disciplinary actions. *Id.*, p. 2, ¶ 4.  Under the OGP, a wide range of remedies are available to inmates. These remedies include: 1) possible restitution of property or funds; 2) correction of records; 3) administrative actions; 4) agreement by department officials to remedy an objectionable condition within a reasonable time; and 5) a change in a local or department policy or procedure.  ECF No. 27, Exhibit 1 (Curl Decl.), p. 2, ¶ 5.

REPORT AND RECOMMENDATION - 4

The grievance procedure consists of four levels of review:

Level 0 - Complaint or informal level. The grievance coordinator at the prison receives a written complaint from an offender on an issue about which the offender wishes to pursue a formal grievance. At this complaint level, the grievance coordinator pursues informal resolution, returns the complaint to the offender for rewriting, returns the complaint to the offender requesting additional information, or accepts the complaint and processes it as a formal grievance. Routine and emergency complaints accepted as formal grievances begin at

Level I, complaints alleging staff misconduct are initiated at Level II.

Level I - Grievances against policy, procedure, or other offenders, and grievances processed as emergencies. The local grievance coordinator is the respondent at this level.

Level II - Appeal. Inmates may appeal Level I grievances to Level II. Staff conduct grievances are initiated at this level. All appeals and initial grievances received at Level II are investigated and the prison superintendent is the respondent. Emergency grievances can only be appealed to Level II.

Level III - Appeal. Inmates may appeal all Level II responses except emergency grievances to Department headquarters in Tumwater, where they are re-investigated. Administrators are the respondents.

ECF No. 27, Exhibit 1 (Curl Decl.), pp. 2-3, ¶ 6.

Since March 1, 2005, offenders have 20 working days from the date of an incident to file a grievance. An exception to this filing timeframe is allowed if there is a valid reason for the delay. This timeframe does not apply to complaints against a specific written policy or procedure. The Grievance Coordinators are authorized to wave the normal twenty day filing timeframe in which to submit a complaint if the offender presents documentation of his/her attempts to resolve a conflict through a contractor's review process and allows the coordinator to photocopy the documentation for the grievance record. Offenders have (5) working days from the time they receive a response to Level I and II grievances to appeal. An offender cannot appeal a Level III decision. An offender who wants to appeal a response of

REPORT AND RECOMMENDATION - 5

"non-emergency" to an Emergency Grievance must do so within 24 hours of receiving a response. Also, an inmate must file his grievance at the facility where the concerns arose. He cannot file at another facility because staff does not have jurisdiction over any other facility. The DOC's grievance system is well known to inmates; currently over 20,000 grievances are filed per year system wide. ECF No. 27, Exhibit 1 (Curl Decl.), p. 3, ¶ 7.

### 1)   Three Mail Rejections

Mail rejections are not grievable under the DOC grievance system, as mail rejections have their own appeal process. However, this process only applies to mail which is opened and rejected for content. When mail is returned to the sender because the mail in question fails to conform to policy, then no mail rejection is completed, and the issue is grievable under the DOC grievance system. ECF No. 27, Exhibit 1 (Curl Decl.), ¶ 9; Exhibit 2 (Declaration of Randy Smith), ¶ 6.

According to Randy Smith, supervisor of the mailroom at the CRCC, DOC Policy 450.100, Mail for Offenders, sets forth the procedures governing mail service for offenders. Pursuant to DOC Policy 450.100(VII), mail which is rejected requires completion of a mail rejection form. The process outlined in DOC Policy 450.100(VII) applies to mail which is opened and rejected for content. This rejection can then be appealed within 10 calendar days of the rejection decision. ECF No. 27, Exhibit 2 (Smith Decl.), ¶ 5, Attachment A (DOC Policy 450.100).

DOC Policy 450.100(IV)(A)(1)(a) states that mail sent to offenders via the postal service must be addressed with the recipient's full name and DOC number. The reason for this policy is that the identity of an offender cannot be positively identified without the DOC number, because there are many offenders with the same name. Mail which fails to comply with DOC Policy

REPORT AND RECOMMENDATION - 6

450.100(IV)(A)(1)(a) is not opened and inspected – such mail remains sealed, and is returned to the sender with the reason for return noted on the outside of the envelope.  No rejection form is completed and issued to the offender because, as stated, the identity of the intended offender cannot be determined with certainty.  In such cases, because no mail rejection form is completed, an offender who wishes to contest the return of the mail is required to grieve through the DOC Offender Grievance Program (OGP).  *Id.*, ¶ 6.

Mr. Smith states that no mail rejections were issued for any of the three pieces of mail at issue in Mr. Davidson's complaint.  Therefore, there is no record of any attempt to appeal the mail items through the mail rejection appeal process outlined in DOC Policy 450.100(VIII). According to Mr. Smith, had Mr. Davidson attempted to use that appeal process for the mail items in question, he would have been referred to the OGP grievance process.  ECF No. 27 (Smith Decl.), ¶ 8.

According to DOC records, Mr. Davidson filed an initial grievance relating to the mail rejections on October 30, 2010 under grievance Log ID No. 1022967.  The grievance was returned to Plaintiff asking that he submit more information regarding the dates and to whom the mail was sent to assist in the investigation.  ECF No. 27, Exhibit 1 (Curl Decl.), ¶ 10, Attachment C, p. 12; ECF No. 32, p. 28.  Plaintiff resubmitted the grievance on November 5, 2010, in which he identified "8/16/2010, 9/15, 2010 and 10/7/2010 as dates when paperwork was returned to the Court from CRCC marked "refused".  He claims that he missed deadlines on these actions.  ECF No. 32, p. 27.  On November 2, 2010, the grievance coordinator responded: "CRCC mailroom states that the mailroom will "refuse" mail when legal mail does not contain the offender's DOC#.  Policy 450,100; IV, 1, a – mail sent via USPS will be addressed with full committed name and DOC#."  *Id.*

REPORT AND RECOMMENDATION - 7

On November 12, 2010, Plaintiff filed "an appeal to next level" of grievance Log ID No. 1022967, complaining that the grievance coordinator failed to address "the failure of [CRCC] to make a reasonable effort to identify intended recipients of legal mail, to provide a remedy when legal mail is "refused", to provide an affidavit about his refused legal mail, and to stop the illegal practice of mail refusal." ECF No. 32, p. 26.  On November 18, 2010, the grievance coordinator responded: "Policy 450.100 I, A: Offenders will be responsible for informing their correspondents regarding rules governing mail, including legal mail.  If your mail was not accepted at CRCC it is because it did not comply with the requirements for mail or legal mail." ECF No. 32, p. 25.

The grievance did not go beyond Level I.  *Id.*  Plaintiff states in his sworn response that he received the refused mail on November 12, 2010 and Defendant Cook contacted the Kent Court by telephone regarding the mail refusals and absolving him of fault.  Therefore, he claims the matter was resolved because he received the relief sought and therefore, his grievance was exhausted.  ECF No. 32, ¶¶ 9-10.

**2)   Release Date**

On November 6, 2010, Mr. Davidson filed an initial grievance, claiming that he was being held beyond his earned early release date of November 1, 2010, under grievance Log ID No. 1023241. ECF No. 27, Exhibit 1 (Curl Decl.), ¶ 11, Attachment D, p. 15; ECF No. 32, p. 54. In the grievance, Mr. Davidson states that he has earned the early release date and that he was being denied "due process under law."  In the response portion of the grievance it states:  "On 11/4/10 notice was received that you no longer owe supervision.  Your release date was set.  You have a 35 day victim/witness notification requirement. ERD 12/9/10 is correct.  If you have any questions speak w/your counselor." *Id.*  Plaintiff appealed to Level I, grieving that the 35 day

REPORT AND RECOMMENDATION - 8

victim notification should have been done prior to his release.  In the response portion of the grievance it states:  "Upon receiving your appeal an investigation to your 35 day victim witness was done.  It was complete on 11/16/10.  You were released immediately, on 11/16/10."  ECF No. 27, Exhibit 1 (Curl Decl.), Attachment D, p. 17.

Plaintiff states that he did not pursue the appeal of this grievance because his case worker, Defendant Cook, told him that if he challenged DOC on the conditions of his confinement, he would be denied his early release date.   ECF No. 32, ¶ 12.  In addition, he states that his grievance was properly exhausted because he was granted the relief he requested when he was released on November 16, 2010.  *Id.*, ¶ 15.

**C.     Facts Relating to Kent Municipal Court – Release Date and Returned Mail**

In his opposition to Defendants' motion to dismiss, Plaintiff provided a copy of the Kent Municipal Court docket in Case No. K79016FV.  ECF No. 32, pp. 21-23.  The Court takes judicial notice of these documents because they are a public record and are not in dispute.

The Kent Municipal Court docket shows that on August 16, 2010, a notice of review hearing from the court was returned "refused – no DOC or Unit #".  ECF No. 32, p. 21.  The review hearing was rescheduled for September 9, 2010.  The docket reflects another hearing notice returned as "refused" on September 15, 2010.  During September 2010, Plaintiff filed a motion to dismiss and for a telephonic hearing and the City Attorney filed a motion and order to quash the warrant.  On September 27, 2010, the judge granted the motion to quash, recalled the warrant, and set a review hearing for November 4, 2010.  *Id.*

On October 5, 2010, the docket reflects that someone from the CRCC called the court requesting a copy of the order quashing the warrant so that Plaintiff could be released "upon completion of his commitment 11/9/10."  A copy of the signed motion and order quashing

REPORT AND RECOMMENDATION - 9

warrant was faxed to the CRCC.  On October 7, 2010, another hearing notice was returned to the court because it contained no DOC number.  *Id.*

On November 4, 2010, Denise Cooke of CRCC called the Kent Municipal Court and advised that Plaintiff's new release date was December 9, 2010.  The next day, an Order of Release from the DOC with the December 9th release date was filed with the court.[1]  The court rescheduled the review hearing to December 17, 2010 on the "out of custody jail calendar." Notices were mailed to Plaintiff at his release address and CRCC.  ECF No. 32, p. 23.  There is no claim that Plaintiff failed to receive these notices.  The review hearing was again rescheduled – until February 2, 2011 – because Plaintiff advised the court that he had a scheduling conflict.  On February 2, 2011, the case was referred back to probation.  *Id.*

**DISCUSSION**

A court will dismiss a claim if it lacks sufficient factual material to state a claim that is plausible on its face.  Fed. R. Civ. P. 12(b)(6); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007).  A complaint that merely restates the elements of a cause of action and is supported only by conclusory statements cannot survive a motion to dismiss.  *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965-66.  When evaluating a motion to dismiss, a court is not required to accept as true factual allegations that are based on unwarranted deductions of fact or inferences that are unreasonable in light of the information provided in the complaint.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A court may, in its discretion, dismiss a prisoner's complaint with or without leave to amend.  *See Lopez v. Smith*, 203 F.3d 1122, 1124 (9th Cir. 2000).

---

[1] However, as noted above, Mr. Davidson was actually released on November 16, 2010.  ECF No. 27, Exhibit 1 (Curl Decl.), Attachment D, p. 17.

REPORT AND RECOMMENDATION - 10

On a motion to dismiss, material allegations of the complaint are taken as admitted and the complaint is to be liberally construed in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S. Ct. 1843, 1849 (1969), *reh'g denied*, 396 U.S. 869, 90 S. Ct. 35 (1969); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977). Where a plaintiff is *pro se*, his allegations must be viewed under a less stringent standard than allegations of plaintiffs represented by counsel. *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594 (1972), *reh'g denied*, 405 U.S. 948, 92 S. Ct. 963 (1972). While the court can liberally construe a plaintiff's complaint, it cannot supply an essential fact an inmate has failed to plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (quoting *Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)). A motion to dismiss only admits, for the purposes of the motion, all well pleaded facts in the complaint, as distinguished from conclusory allegations. *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976); *see also*, *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (conclusory allegations unsupported by facts are insufficient to state a claim under 42 U.S.C. § 1983).

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(c)(1) requires:

> The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

A motion to dismiss for failure to exhaust administrative remedies is properly brought as an unenumerated Fed. R. Civ. P. 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) (citations omitted). When considering whether to dismiss a complaint for lack of exhaustion of administrative remedies, the court may look outside the pleadings to determine

REPORT AND RECOMMENDATION - 11

whether the issue has been exhausted and may decide disputed issues of fact. *Id.* at 1119-20. To survive a motion to dismiss for failure to exhaust, an inmate's claims must be both exhausted and timely. *McCollum v. California Dept. of Corrections and Rehabilitation*, 647 F.3d 870 (9th Cir. 2011). This Court determines whether an inmate's claim has been fully exhausted by referencing the prison's own grievance requirements. *Griffin v. Arpaio,* 557 F.3d 1117, 1120 (9th Cir. 2009).

## DISCUSSION

**A.    Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act (PLRA) requires inmates to exhaust all administrative remedies before bringing a § 1983 claim. 42 U.S.C. § 1997e(a); *Griffin*, at 1119. To effectively exhaust his administrative remedies, an inmate must use all the formal steps of the prison grievance process. *Id.* Because the purpose of exhaustion is to give prison administrators a chance to resolve the issues, the inmate must exhaust each of his claims through grievances containing enough factual specificity to notify officials of the alleged harm. *Id.* at 1120. If an inmate fails to adequately exhaust his administrative remedies on a claim, that claim must be dismissed pursuant to an unenumerated Fed. R. Civ. P. 12(b) motion. *Wyatt*, at 1119-20.

Washington state prisoners are required to use the process set forth by the Washington Offender Grievance Program (OGP) to exhaust their claims prior to filing suit. *See Ngo,* 548 U.S. at 90–91 (proper exhaustion requires complying "with an agency's deadlines and other critical procedural issues because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). This means that a prisoner must file any grievances, complaints, and appeals he has concerning his prison conditions in the time, place, and manner required by the prison's administrative rules. *Pozo v. McCaughtry*, 286

REPORT AND RECOMMENDATION - 12

F.3d 1022, 1025 (7th Cir.2002); see also *Marella v. Terhune*, 568 F.3d 1024, 1028 (9th Cir.2009) (A prisoner must comply with a prison's procedural requirements).

### 1) Three Mail Rejections – Grievance Log No. 1022967

As noted above, claims relating to the rejection of mail are addressed through the OGP. ECF No. 27, Exhibit 2 (Smith Decl.). After Plaintiff submitted his initial grievance, he was advised that his mail from the Kent Municipal Court had been refused because the court had failed to include his DOC number. ECF No. 32, p. 27. On November 12, 2010, Plaintiff appealed the initial grievance to Level I, insisting that the response to his initial grievance had not been fully addressed. He asked that the CRCC "make a reasonable effort to identify intended recipients of legal mail, to provide a remedy when legal mail is "refused", to provide an affidavit about his refused legal mail, and to stop the illegal practice of mail refusal." *Id.*, p. 26. He was informed that he was responsible for informing his correspondents about the requirements for mail. ECF No. 32, p. 25.

The grievance did not go beyond Level I. *Id.* Plaintiff argues that because he received the refused mail on November 12, 2010 and Defendant Cook contacted the Kent Court by telephone regarding the mail refusals, which absolved him of any fault, he received the relief sought and therefore, his grievance was exhausted. ECF No. 32, ¶¶ 9-10. As noted above, the Kent Municipal Court docket reflects only that the CRCC called the Court on October 5, 2010 to request a copy of the Judge's order quashing the warrant so that Plaintiff could be released "upon completion of his commitment 11/9/10." ECF No. 32, p. 22. And, on November 4 and 5, 2010, Denise Cooke called the Kent Municipal Court to advise of Plaintiff's new release date and filed an Order of Release with the new release date of December 9, 2010. *Id.*, p. 23.

REPORT AND RECOMMENDATION - 13

When a prisoner has received all of the relief he sought in the intermediate stages of administrative review of his grievance, the Court agrees that there is no further basis for the prisoner to appeal. *See, e.g., Gomez v. Winslow,* 177 F.Supp.2d 977, 984 (N.D.Cal.2001)(citing cases). Here, however, Plaintiff appealed his initial grievance to Level I on November 12, 2010, wherein he insisted he had not received all the relief he requested, which is the same day he received his returned mail and after Denise Cook had contacted the Kent Municipal Court with his new release date. Thus, Plaintiff was seeking additional administrative review. He repeated his previous demands and stated that the withholding of mail was illegal.

In addition, Plaintiff claims in his Amended Petition that the mail rejections were retaliatory. He claims that Defendant Cook cautioned him that he would find it impossible to be released from prison on October 30, 2010 if he continued to challenge the DOC, and that on May 28, 2010 a "Jane Doe" grievance specialist told him that a grievance would not solve the matter and that he should focus on getting out of prison. ECF No. 6, p. 6. However, Plaintiff never filed a grievance against any of the Defendants for retaliating against him by refusing his mail.

Plaintiff also claims in his Amended Petition that the mail rejections caused a delay in his medical care "for denied surgery for bone damages which was pending my release from prison." ECF No. 6, p. 6. He claims that this violated the Eighth Amendment's protection against cruel and unusual punishment. *Id.* Plaintiff never filed a grievance relating to this claim.

Based on the foregoing, the undersigned recommends that Plaintiff's claims relating to the three mail rejections, including claims that the rejections constituted a denial of due process, unreasonable searches and seizures, a violation of equal protection, denial of access to courts, violation of the Eighth Amendment, and retaliation, be dismissed without prejudice for failure to

REPORT AND RECOMMENDATION - 14

exhaust. See *Wyatt*, 315 F.3d at 1120 ("[t]he proper remedy, where a prisoner has failed to exhaust non-judicial remedies, is dismissal of the claim without prejudice.")

    **2)**      **Release Date – Grievance Log No. 1023241**

Mr. Davidson's initial grievance regarding his release date was filed on November 6, 2010. He claimed that he was being held beyond his release date of November 1, 2010 and that this was a violation of his due process rights. ECF No. 27, Exhibit 1 (Curl Decl.), ¶ 11, Attachment D, p. 15; ECF No. 32, p. 49. The grievance coordinator advised that his release date was set for 12/9/10 because of a 35 day victim/witness notification requirement. ERD 12/9/10 is correct. If you have any questions speak w/your counselor." *Id.* Plaintiff appealed to Level I, because he claimed that the 35 day victim notification should have been done prior to his release. In the response portion of the grievance it states: "Upon receiving your appeal an investigation to your 35 day victim witness was done. It was complete on 11/16/10. You were released immediately, on 11/16/10." ECF No. 27, Exhibit 1 (Curl Decl.), Attachment D, p. 17.

Plaintiff states that he did not pursue the appeal of this grievance because he was granted the relief requested and therefore, his grievance was exhausted. ECF No. 32, ¶ 12. In his amended complaint, he alleges that he was denied credit for pretrial detention because he was held until November 16, 2010 and that this was retaliatory. ECF No. 6, p. 6. In addition, he alleges that on November 16, 2010, Defendant Cook asked him to sign a waiver for having been held beyond his release date. However, he refused and requested that his grievance *on the issue* be appealed to the next level. ECF No. 6, p. 7 (emphasis added).

Based on the foregoing, the undersigned concludes that Plaintiff has exhausted his claims relating to his earned early release date, including his claims that he was denied credit for pretrial

REPORT AND RECOMMENDATION - 15

detention and for retaliation, because he received the relief sought. Therefore, there was no need for him to exhaust this issue further.

**B.     Retaliation – Removal of Legal File**

Mr. Davidson alleges that on November 16, 2010, the date of his release, Defendant Cook told him to place all of his legal files in a box, mark it legal mail, and address the box to his release address. ECF No. 6, p. 7. Plaintiff alleges that when he received the box thirty days later (even though it was shipped "over-night"), the box had been opened, the contents read, and all files pertaining to his "claims against DOC" removed. He claims that this was done in retaliation for his "challenge of DOC". ECF No. 6, p. 7. However, he fails to allege sufficient facts from which it may be inferred that any named defendant was involved in any retaliatory conduct.

Here, Plaintiff alleges generally that his legal materials were opened and items were removed from it, and that this was in retaliation for his "challenge of DOC". However, there is nothing contained in Plaintiff's Amended Complaint from which it can be reasonably inferred that Defendants were the ones who opened his box of legal materials and removed items from it. Moreover, there are insufficient allegations from which it can be inferred that any named Defendant engaged in retaliatory conduct.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). In addition, in order to obtain relief against a defendant under 42 U.S.C. § 1983, a plaintiff must prove that the particular defendant has caused or personally participated in causing the

REPORT AND RECOMMENDATION - 16

deprivation of a particular protected constitutional right. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977). To be liable for "causing" the deprivation of a constitutional right, the particular defendant must commit an affirmative act, or omit to perform an act, that he or she is legally required to do, and which causes the plaintiff's deprivation. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Sweeping conclusory allegations against an official are insufficient to state a claim for relief. The plaintiff must set forth specific facts showing a causal connection between each defendant's actions and the harm allegedly suffered by plaintiff. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Rizzo*, 423 U.S. at 371.

Mr. Davidson alleges generally that he was engaged in a "challenge of DOC" but fails to identify the particular protected activity in which he was engaged. He fails to allege that any named defendant took any unlawful "adverse action" against him. He fails to allege that any such adverse action by any named defendant was "because of" the protected activity, that the adverse action chilled his exercise of First Amendment rights, or that the conduct did not advance legitimate correctional goals. Plaintiff has only alleged that when he received his package of materials, his file relating to his claim against the DOC was missing.

The undersigned recommends that Plaintiff be given an opportunity to amend his complaint to include factually specific allegations setting out his claim as to this retaliation claim only. Plaintiff should include names, dates and the circumstances surrounding his claim and state what constitutional right was allegedly infringed and how each or any of the named defendants caused him harm by violating that constitutional right. Plaintiff shall set forth his factual allegations in separately numbered paragraphs and shall allege with specificity the following:

REPORT AND RECOMMENDATION - 17

        (1)      the names of the persons who caused or personally participated in causing the alleged deprivation of his constitutional rights;

        (2)      the dates on which the conduct of each Defendant allegedly took place; and

        (3)      the specific conduct or action Plaintiff alleges is unconstitutional.

The amended complaint shall operate as a complete substitute to the present complaint. Therefore, reference to a prior pleading or another document is unacceptable – once Plaintiff files an amended complaint, the original pleading or pleadings will no longer serve any function in this case.

Plaintiff shall present his complaint on the form provided by the Court. The amended complaint must be legibly rewritten or retyped in its entirety, it should be an original and not a copy, it may not incorporate any part of the original complaint by reference, it must be clearly labeled the "Amended Complaint", and must contain the same cause number as this case. Plaintiff should complete all sections of the court's form. Plaintiff may attach continuation pages as needed but may not attach a separate document that purports to be his amended complaint.

**C.**    **Official Capacity Claims**

The State, its agencies, and state officials sued in their official capacities are not persons subject to suit under § 1983 for damages or other retrospective relief. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). In addition, where a state employee is sued for damages in his official capacity, the State is deemed the real party in interest, and is not subject to liability under 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. at 71 (citations omitted). Therefore, to the extent Plaintiff sues Defendants in their official capacity, the claims should be dismissed.

REPORT AND RECOMMENDATION - 18

### D.     Qualified Immunity

Defendants also argue that they are entitled to qualified immunity as to Plaintiff's claims relating to the mail restrictions which led to the three mail rejections. ECF No. 27, p. 8. However, as to these claims, the issue is moot as the Court has found that Plaintiff's claims relating to the three mail rejections are must be dismissed for failure to exhaust.

### E.     Motion for Costs and Attorney Fees and 28 U.S.C. § 1915(g) Strike

Defendants ask the Court to find that Plaintiff's claims are patently frivolous and to impose a "strike" under 28 U.S.C. § 1915(g). They also seek their costs and attorney fees. The undersigned is not persuaded that Plaintiff's claims are frivolous. The court is recommending herein that Plaintiff be allowed to replead one of his claims and there remains the claim regarding his release after his earned early release date. Therefore, it is recommended that this request be denied at this time.

### CONCLUSION

For the reasons stated above, the undersigned recommends the following:

(1)     Defendants' motion for dismissal should be **GRANTED as to:** Plaintiff's claims relating to the rejection of his mail (including claims that the rejections constituted a denial of due process, unreasonable searches and seizures, a violation of equal protection, denial of access to courts, violation of the Eighth Amendment, and retaliation). These claims should be **Dismissed Without Prejudice for failure to exhaust.**

(2)     Defendants' motion for dismiss should be **GRANTED as to:** Plaintiff's claims against Defendants in their official capacities. These claims should be **Dismissed With Prejudice.**

(3)     Defendants' motion to dismiss should be **DENIED as to:** Plaintiff's claim that he was wrongfully held beyond his early release date.

(4)     Defendants' motion to dismiss should be **DENIED as to:** Plaintiff's claim that materials were removed from his legal box. Plaintiff should

REPORT AND RECOMMENDATION - 19

be allowed to submit an amended complaint within twenty days of the Court's Order.

(5)   Defendants' motion to dismiss should be **DENIED as to** Defendants' motion for costs and attorney's fees and the imposition of a 28 U.S.C. § 1915(g) strike.

(6)   This matter should be re-referred to the undersigned for further proceedings.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **February 22, 2013,** as noted in the caption.

**DATED** this  1st  day of February, 2013.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 20