UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBIE DAVIDSON,

                Plaintiff,

  v.

ELDON VAIL, DAN PACHOLKE, JEFF UTTECHT, DAVID P. BAILEY, MICHELLE DUNCAN, K. WILLIAMS, DENISE M. COOK, JOHN DOES (Grievance Programs), JACQUELINE FLUAITT,

                Defendants.

NO. C11-6048 BHS/KLS

**REPORT AND RECOMMENDATION**
Noted For: October 4, 2013

     Before the Court is the Motion for Summary Judgment of Defendants Eldon Vail, Dan Pacholke, Jeff Uttecht, David Bailey, Michelle Duncan, K. Williams, Denise Cook, and Jacqueline Fluaitt. ECF No. 46. Defendants served Plaintiff with a *Pro Se* Prisoner Dispositive Motion Notice consistent with *Woods v. Carey,* 684 F.3d 934, 935, 940-41 (9th Cir. 2012) and in accordance with the holding of *Rand v. Rowland,* 154 F.3d 952, 962-63 (9th Cir. 1998). ECF No. 46. Plaintiff filed no papers in opposition. His failure to do so may be considered by the Court as an admission that the Defendants' motion has merit. Local Rule W.D.Wash. CR 7(b)(2).

Having reviewed Defendants' motion, supporting declarations, and balance of the record, the Court recommends that Defendants' motion for summary judgment (ECF No. 46) be granted.

**FACTS**

**A.     Plaintiff's Allegations**

This action is proceeding under Plaintiff Robie Davidson's second amended complaint. ECF No. 43.  Mr. Davidson was formerly incarcerated at the Coyote Ridge Corrections Center. He states that he was due to be released from prison on October 30, 2010, his early release date (ERD).  Mr. Davidson objected to several Department of Corrections (DOC) conditions that were to be imposed on his release, including "inmate banking withholding funds on legal financial obligations, prohibiting written contact with a protected party, requirement of address for release and warrant with a court of limited jurisdiction."  He was also concerned about a "5288" release condition, which is a condition that does not require supervision after release. *Id.*, p. 3.

Between May 28, 2010 and November 16, 2010, Mr. Davidson sought to address these release conditions through grievances, kites, letters and telephone calls with CCII Denise Cook, CUS K. Williams, CPM M. Duncan, Associate Superintendent D. Bailey, Superintendent Jeff Uttecht, mailroom supervisor Jane/John Doe, Grievance Coordinator Jacqueline Fluiatt, DC Secretary Eldon Vail, and DOC Director Dan Pacholke.  ECF No. 43, p. 4.  Defendant Cook cautioned him that he would find it impossible to release on his October 30, 2010 ERD and Defendant Fluaitt told him to focus on keeping his head down and getting

1  out of prison as the grievance process could not resolve these issues, and that to persist would
2  prevent his release on the October 30, 2010 date. *Id.*

3  Mr. Davidson was not released on October 30, 2010[1], but was held until November 16,
4  2010. He claims that the delay of 17 days was in retaliation for his continued challenge to the
5  release conditions. He also claims that he was denied credit for pretrial detention. *Id.*

6  Mr. Davidson further alleges that during his out-processing, Defendant Cook asked him
7  to sign a waiver for having been held beyond his ERD and withdrawing his grievances. He
8  refused to sign a waiver and requested that his claims remain active. Defendant Cook
9  instructed him to place all of his legal files in a box marked "Legal Mail" for mailing to his
10 release address. However, when he received the box, he discovered that his mail and been
11 opened, read, and all files pertaining to his claims against DOC had been removed by
12 Defendant Cook. Mr. Davidson claims that this was also in retaliation for his challenges to the
13 imposed conditions and being held beyond his release date. *Id.*

**B.  Facts Presented by Defendants**

Defendants provide the following facts, which are not disputed by Mr. Davidson.

**(1)  Facts Relating to Release Date**

DOC Policy 350.100, Earned Release Time, sets forth procedures on calculating an offender's Earned Release Date (ERD). An offender's ERD is calculated by taking the original sentence length ordered by the Court, subtracting earned time credits of jail time and jail good conduct time, and then reducing the remainder of the days to be served by the earned

---

[1] DOC electronic records show that Mr. Davidson's ERD was actually November 9, 2010. ECF No. 46-3, Bitton Decl., Attachment A. Thus, Mr. Davidson was held 7 days past his ERD.

REPORT AND RECOMMENDATION - 3

release percentage.  Once in prison, every offender is eligible for Earned Release Time up to a certain percentage of their sentence with the exception of offenders serving a mandatory minimum term equal to the ERD or offenders with a sentence of Life without the Possibility of Release and Death.  Eligibility requirements and earned release percentages vary based on the date and type of offense.  Earned time credits also include participation in approved work or school programs.  In total, Early Release Time includes earned time credit and good conduct time.  A loss of either earned time credit or good conduct time extends the ERD.  Therefore, the ERD is the earliest possible day an offender will be released.  ECF No. 46-1, Declaration of Wendy Stigall (statewide Correctional Records Program Administrator), ¶ 3, Attachment A.

When Records staff input the sentence length, jail time credit, and jail good time credit, the Offender Management Network Information (OMNI) calculates the ERD and Maximum Expiration Date and displays both expiration dates in the offender's electronic file.  *Id.,* ¶ 4.

DOC Policy 350.200, Offender Transition and Release, provides procedures and guidelines related to offender release from DOC custody. In order to promote successful transition into the community, DOC assists offenders with release preparation.  Pursuant to DOC Policy 350.200, the Counselor will meet with the offender to prepare the Offender Release Plan (release plan) for approval and, among other things, obtain information for any potential release addresses.  An offender who requires supervision is released to his county of origin, unless otherwise approved.  If the offender cannot provide an address, the Counselor assists in locating appropriate housing.  In addition, at 30 days prior to the ERD, if the offender cannot afford to reside at an identified address or does not have an address, the Counselor will

REPORT AND RECOMMENDATION - 4

submit paperwork to enroll the offender in the Housing Voucher Program. ECF No. 46-2, Declaration of Denise Cook (CRCC Classifications Counselor 2), ¶4, Attachments A-B.

Pursuant to DOC Policy 350.200, if a release plan cannot be developed, offenders will be released on their Maximum Expiration date. If an offender has supervision requirements when preparing to release, they will be held until an approved address is received. If the offender does not have a supervision requirement, they should not be held beyond their ERD. If an offender receives additional jail credits or an amended sentence which would put the offender past their ERD, they are immediately released. ECF No. 46-1, Stigall Decl., ¶ 5.

According to DOC records, Mr. Davidson's maximum release date was March 21, 2011 and his ERD was November 9, 2010. ECF No. 46-3, Attachment A.

When Mr. Davidson was housed at the CRCC, he was assigned to Defendant Cook's caseload from May 28, 2010 through November 16, 2010. According to Defendant Cook, Mr. Davidson's initial classification required that he remain on supervision after his release and therefore, supervision would need to be considered when making determinations related to his release. ECF No. 46-2, Cook Decl., ¶ 5; ECF No. 46-3, Declaration of Wendy Bitton (Correctional Records Technician), Attachment A (DOC 786047 Sentence Worksheet for Robie Davidson).

On June 1, 2010, Defendant Cook met with Mr. Davidson to complete an Intake Review. During this initial meeting, he raised concerns on "imposed" DOC conditions. In particular, he was concerned about release address requirements, since he had an outstanding warrant from the Kent Municipal Court. Defendant Cook cautioned Mr. Davidson that it may be difficult to release by his set ERD. She also explained that because of his outstanding

warrant, he was not eligible for a housing voucher. Without a voucher, he had no funds to pay for housing and therefore, it would be difficult to secure a valid release address in time. Another difficulty in releasing was that his initial classification had a supervision component which required him to submit a viable release address prior to releasing and be approved by the receiving county. Mr. Davidson's county of origin was Pierce County. Mr. Davidson had requested to release to his friend's address in King County, which required special approval. ECF No. 46-2, Cook Decl., ¶ 6.

After the intake meeting, Defendant Cook began to work on Mr. Davidson's release plan which included meeting with him to discuss the outstanding warrant and release conditions. As part of this effort, she also assisted Mr. Davidson in having the warrant quashed. On October 5, 2010, Defendant Cook was informed by the Kent Municipal Court that the warrant had been recalled on September 27, 2010. Meanwhile, Mr. Davidson's release address in King County was secured. ECF No. 46-2, Cook Decl., ¶ 7. According to Ms. Cook, Mr. Davidson's ERD was in fact November 9, 2010. Therefore, had he not had an outstanding warrant or had he provided an approved release address, she believes it was highly likely that he would have been released at the time on his ERD. *Id.*

On November 4, 2010, Defendant Cook was informed that Mr. Davidson was no longer classified as requiring supervision, so Defendant Cook completed and submitted a new release plan reflecting this status. That same day, the Records Department completed and emailed to Defendant Cook the required Law Enforcement and Victim Witness Notifications, which she forwarded on to Mr. Davidson. ECF No. 46-2, Cook Decl., ¶ 8. Defendant Cook told Mr. Davidson that he would be releasing on December 9, 2010, a date calculated and completed by

1 the Records staff.  On November 5, 2010, Defendant Cook spoke with Mr. Davidson's release
2 sponsors and noted he would require a bus ticket on December 9, 2010.  The Records
3 Department received Mr. Davison's new ORP on November 15, 2010.  The following day, the
4 Records Department approved the release plan and determined that Mr. Davidson met criteria
5 to be released without supervision.  Defendant Cook was informed that Mr. Davidson would be
6 
7 released immediately rather than on December 9, 2010.  *Id.*, Attachment C.

8        DOC records indicate that on June 23, 2010, Wendy Bitton completed an intake audit
9 of Mr. Davidson's record and concluded: "No problems noted. P will release as a 5288." ECF
10 No. 46-3, p. 6 (Attachment A), and that on November 15, 2010, DOC employee Lori Leigh
11 noted:
12 
> While reviewing the Upcoming Release Report, it was discovered that P might
> be eligible for 5288.  This was researched and found that he is eligible.  CC
> Cook contacted immediately for an offender address.  Release paperwork typed
> up and submitted to CRS for approval.  End of Sentence pictures taken and ESR
> contacted at HG for his release date of 12-9-10.  35 day Victim Witness and
> LEN immediately completed 11-4-10.  All notifications completed 11-4-10.
> Received original investigation pending only ORP from CC Cook on 10-14-10
> and placed this ORP in pending file.  Notification ORP for 5288 was received
> today, 11-4-10 from CC Cook.

18 ECF No. 46-3, p. 6 (Attachment A).

19       On November 16, 2010, a notation on Mr. Davidson's record by DOC employee Lisa
20 Gonzales states, in part, that Mr. Davidson "will release immediately on 11-16-10 per Steve
21 Eckstrom at Victim Witness….Offender is a 5288 release but has supervision on his CCJ cause
22 Pierce County 10-1-00816-2.  He was told to report to his CCO within 24 hours." ECF No.
23 46-3, p. 6 (Attachment A).
24 
25 
26

1   Defendant Cook denies that she asked Mr. Davidson to sign a waiver for having been
2   held beyond his release date.  She did ask him if he wanted to continue to pursue his
3   grievances.  When he indicated that he wished to pursue them, Defendant Cook informed the
4   Grievance Coordinator of his decision.  ECF No. 4-2, Cook Decl., ¶ 9, Attachment D.

**(2)   Facts Relating to Legal Materials**

DOC Policy 440.000, Personal Property for Offenders, includes procedures on shipping offender property.  All offender personal property is itemized and recorded, and when possible, done in the presence of the offender.  Offenders are permitted to review the inventory sheet before signing to ensure it is accurate and complete.  It is the offender's responsibility to ensure the inventory remains accurate and current.  ECF No. 46-4, Declaration of Thomas Smith (CRCC Property Officer), Attachment A.

When releasing from prison, authorized personal property is returned to the Offender pursuant to the offender's property inventory.  An offender can choose to either carry his personal property out of the prison with him or to ship his property to a release address.  If the offender chooses to ship the package, the offender places his items in a box and brings it into the property room.  In the offender's presence, property staff check the contents, tape the box closed, address it, and send it to the mailroom.  When the package leaves the property room, it is noted in the offender's electronic file.  *Id.*, ¶ 5; ECF No. 48 (Praecipe to file Attachment B).

Because the property is leaving the prison facility, no items are removed by any property officer except in the case of serious contraband such as a weapon.  Disposable items such as personal hygiene items, periodicals, or any other paper materials are not inventoried.

1  Once the box reaches the mailroom, the box is neither rechecked nor reopened since it would
2  have already been checked and secured by property room staff, and it remains sealed until it
3  arrives at its final destination. *Id.,* ¶ 6. Property and mail room staff are the only persons
4  responsible for reviewing and securing an offender's property for transport. A Classification
5  Counselor would have no part in this process and would not be authorized to participate in this
6
7  process. *Id.*, ¶ 7.
8  According to Defendant Cook, it is beyond her scope of employment to direct or
9  arrange for an offender to send packages or legal mail. She has no involvement in the packing
10 or shipping of offender property. She also states that at no time did she direct Mr. Davidson to
11 place all of his legal materials in a box marked legal mail for shipment to his release date,
12 review the contents of his legal files, or remove any contents from his legal files. ECF No. 46-
13 2, Cook Decl., ¶ 11.
14

**SUMMARY JUDGMENT STANDARD**

16 Summary judgment is proper when there is no genuine issue as to any material fact and
17 the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(a). Where the
18 party opposing a motion for summary judgment will have the burden of proof on an issue at
19 trial, the moving party can prevail by "pointing out to the district court ... that there is an
20 absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477
21 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party meets this
22 initial burden, the opposing party must then "set forth specific facts showing that there is a
23 genuine issue for trial" in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477
25 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quotation marks omitted); Fed.R.Civ.P.
26

56(e). A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990). A court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001). This is true even when a party appears *pro se*. *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007). In deciding a motion for summary judgment, a court draws all inferences in the light most favorable to the party opposing the motion. *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 668 (9th Cir. 1980).

Where the nonmoving party is *pro se*, a court must consider as evidence in opposition to summary judgment all contentions "offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the party appearing pro se] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (citation omitted), *cert. denied*, 546 U.S. 820, 126 S. Ct. 351, 163 L.Ed.2d 61 (2005).

## DISCUSSION

A. **Due Process – ERD**

Mr. Davidson alleges Defendant Cook violated his due process rights by denying his release and holding him 17 days past his ERD. ECF No. 43, pp. 3-5. As noted above, Mr. Davidson's ERD was actually November 9, 2010, and Defendants acknowledge that he was held 7 days beyond that date. ECF No. 46-3, Bitton Decl., Attachment A.

Mr. Davidson claims that the delay in his release happened because of his continued challenge of imposed conditions. *Id.* He defines imposed conditions as conditions regarding inmate banking, the prohibition on writing to a protected party, and those conditions that must be met in order to release. *Id.*

The Due Process Clause provides that a person shall not be deprived of life, liberty or property without due process of law. U.S. Const. Amend. XIV, "A section 1983 claim based upon procedural due process has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process. The Due Process Clause does not create substantive rights in property; the property rights are defined by reference to state law." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). To establish a due process violation, a plaintiff must first demonstrate he has been deprived of a protected right or interest. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 11 (1979). If a plaintiff cannot show the deprivation of a protected interest, there is no right to due process.

The Court first notes that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *In re Pullman*, 167 Wash. 2d 205, 212, 218 P.3d 913, 915-16 (2009) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex,* 442 U.S. 1, 7 [1979]; *Meachum v. Fano*, 427 U.S. 215 [1976]; *Matter of Cashaw*, 123 Wash.2d 138, 144, 866 P.2d 8. [1994]). Therefore, Mr. Davidson has no right to be released by his ERD. *Petition of Fogle*, 128 Wash.2d 56, 65-66, 904 P.2d 722 (1995)

REPORT AND RECOMMENDATION - 11

(citing *Petition of Anderson*, 112 Wash.2d 546, 548, 772 P.2d 510, *cert. denied*, 493 U.S. 1004 [1989]).

Mr. Davidson's allegation that he was denied pretrial credit and therefore, his ERD was miscalculated is controverted by his electronic OMNI file shows the pretrial credit was included when calculating his ERD. ECF No. 46-3, Britton Decl., Attachment A.

According to Wendy Stigall, DOC's Correctional Records Program Administrator, when an offender enters a facility, their initial classification sets both their ERD and Maximum Expiration Date, or the maximum amount of time the offender will spend in the facility. ECF No. 46-1, Stigall Decl, ¶ 5. Prior to entering the facility, the offender may have served pretrial time and earned credit to reduce his sentence. "The DOC's earned early release credit system, also known as "good-time", consists of two types of credit: good conduct time and earned time. A prisoner in a state facility earns "good-conduct time" by good behavior at 10 days per 30 days served; generally, the prisoner is presumed to have earned the full good-conduct time available unless the facility specifically deducts for misbehavior." *Fogle*, 128 Wash.2d at 59. This means when an offender enters a prison facility, he is automatically awarded the maximum amount of good time credit possible, from both presentence incarceration and any good-time earned in jail. ECF No. 46-1, Stigall Decl., ¶ 3.

Even if the Court assumes, for purposes of this motion, that Mr. Davidson's ERD had been calculated incorrectly, there is no constitutional right to release by the ERD, and the DOC can detain an offender longer for legitimate reasons. One such reason is if an offender has a supervision requirement when preparing to release or cannot provide a valid release address. If so, they will be held until an approved address is received. ECF No. 46-1, Stigall Decl., ¶ 5.

Mr. Davidson next alleges he was held beyond his release date. ECF No. 43, p. 4. Defendants concede that Mr. Davidson was held beyond his ERD by 7 days because Mr. Davidson was unable to provide a viable release address. ECF No. 46-2, Cook Decl., Attachment C.

The evidence reflects that during the time Defendant Cook was working with Mr. Davidson to prepare his release plan, he required assistance with getting an outstanding warrant in Kent County quashed so that he could qualify for a housing voucher, obtain approval to be released to county other than Pierce County (his county of origin) because Mr. Davison originally had a supervision requirement. ECF No. 46-2, Cook Decl., ¶¶ 6-7, Attachment C. After it was determined that Mr. Davidson no longer required supervision, his ORP was updated on November 4, 2012; the updated release plan was reviewed by the Records Department on November 15, 2012 and Mr. Davidson was released the following day. *Id.*, ¶ 8. Thus, the evidence reflects that the 7-day delay in releasing Mr. Davidson was due to a delay in completing his release plan so that he could be released to his address of choice.

Based on the foregoing, the undersigned concludes that Mr. Davidson was afforded due process related to his release and this claim should be dismissed.

**B.      Retaliation**

Mr. Davidson alleges that Defendants retaliated against him for filing grievances and letters regarding his release conditions by (1) holding him beyond his release date and (2) by removing legal files from his property.

To prevail on a retaliation claim under § 1983, a plaintiff must show: (1) an adverse action taken by a state action against the inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment right, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson,* 408 F.3d 559, 567–68 (9th Cir. 2005); *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994).

With respect to the fourth requirement that a plaintiff demonstrate that adverse action chilled the prisoner's exercise of his First Amendment rights, plaintiff "does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill *or* silence a person of ordinary firmness from future First Amendment activities.'" *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting *Rhodes*, 408 F.3d at 568–69) (emphasis in original). Alternatively, a plaintiff may allege facts showing that the defendants *intended* to chill the plaintiff's First Amendment rights. *Mendocino Env'l Ctr. v. Mendocino County.*, 192 F.3d 1283, 1300 (9th Cir. 1999). Finally, in order to survive summary judgment, the plaintiff bears the burden of showing that there was no legitimate penological objective to the defendant's actions. *See Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).

Filing prison grievances and lawsuits is clearly protected conduct. Mr. Davidson states that he filed grievances and wrote numerous letters complaining about the conditions related to his release. However, Mr. Davidson has not met his burden of showing that his protected activities were "the 'substantial' or 'motivating' factor behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir.2009) (quotation and citation omitted).

**(1)   ERD Release**

As discussed above, the evidence reflects that the 7 day delay in Mr. Davidson's release was due to a delay in completing his release plan so that he could be released to an address in King County. The evidence, which is not disputed by Mr. Davidson, reflects that the pre-release conditions of which Mr. Davidson complains are applicable to all prisoners leaving a DOC institution and not merely to Mr. Davidson. There is no evidence from which it may be inferred that any adverse action was taken against Mr. Davidson or that defendants intended to retaliate against him by delaying his release from prison by a week. This claim should be dismissed.

**(2)     Legal Documents**

Mr. Davison alleges that Defendant Cook removed documents from a box of his personal property. ECF No. 43, p. 5. Defendant Cook denies that she did so and states that she was not involved in any way with the shipment of his property. ECF No. 46-2, Cook Decl., ¶¶ 10, 11. CRCC Property Officer Thomas Smith confirms that only property and mailroom staff are responsible for reviewing and securing an offender's property for transport. ECF No. 46-4, Smith Decl., ¶ 7. The Inmate Parcel History for Mr. Davidson also reflects that his property passed through the property room on November 12, 2010, four days prior to when he claims that Defendant Cook directed him to place his property in a box and then removed files from them before they were mailed. *Id.*; ECF No. 48 (Attachment B). Mr. Davidson does not dispute these facts.

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, but rather views all evidence and draws all inferences in the light most favorable to the non-moving party. *T.W. Elec. Serv., Inc.,*

1  *v. Pac. Elec. Contractors –Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987) (*citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *see also Hrdlicka v. Reniff*, 631 F.3d 1044, 1048, 1051 (9th Cir.2011); *Motley v. Parks*, 432 F.3d 1072, 1075 n. 1 (9th Cir.2005) (en banc); *Miranda v. City of Cornelius*, 429 F.3d 858, 860 n. 1 (9th Cir.2005).  However, conclusory testimony in affidavits and motion papers is insufficient to raise genuine issues of fact and defeat summary judgment.  *Thornhill Publ'g Co., Inc. v. GTE Corp*., 594 F.2d 730, 738 (9th Cir.1979).  Similarly, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts" when ruling on the motion.  *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); *see also Hansen v. United States*, 7 F.3d 137, 138 (9th Cir.1993) ("When the non-moving party relies on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.")  As the Supreme Court has stated, "[the] mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

       There is no evidence to support Mr. Davidson's bare allegation that Defendant Cook was in any way involved with handling his personal property on his release.  Furthermore, even if it is assumed that Mr. Davidson's kites, letters, and call logs "regarding his challenges" were removed to prevent him from using them in this lawsuit, he cannot show a link between the retaliation he alleges and a chilling of his exercise of First Amendment rights.  *See Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Pratt* 65 F.3d at 807; *Valandingham v. Bojorquez*,

866 F.2d 1135, 1138-39 (9th Cir. 1989). Mr. Davidson clearly retained the ability to file this lawsuit and for purposes of Defendants' motion for summary judgment, the Court has assumed that he was engaged in First Amendment protected activity when he was challenging the conditions of his release. Therefore, it was not necessary for Mr. Davidson to submit materials to show that he was so engaged.

Based on the foregoing, Mr. Davidson has not alleged or presented evidence demonstrating an issue of material fact relating to his claim that Defendant Cook retaliated against him in the handling of his personal property on his release. The undersigned recommends that this claim be dismissed.

C. **Qualified Immunity**

Under the doctrine of qualified immunity, prison officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A civil rights plaintiff opposing a claim of qualified immunity must establish the existence of a constitutional violation, clearly established law to support the claim, and that no reasonable official could believe their conduct was lawful. *Pearson v. Callahan*, 555 U.S. 223 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

As the Court has concluded that Mr. Davidson has failed to raise material issues of fact relating to his constitutional claims, it is not necessary to address the question of qualified immunity.

**CONCLUSION**

1   Based on the foregoing, the undersigned recommends that Defendants' Motion for
2   Summary Judgment (ECF No. 46) be **GRANTED;** and that Plaintiff's claims against
3   Defendants be **dismissed with prejudice.**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **October 4, 2013**, as noted in the caption.

**DATED** this   17th   day of September, 2013.

Karen L. Strombom
United States Magistrate Judge